360.054

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN THE MATTER OF:<br><br>WALDEMAR LUGO ALVAREZ<br><br>Debtor | CASE NO.   10-2846 ESL |
| ORIENTAL BANK AND TRUST<br><br>Movant<br><br>v.<br><br>WALDEMAR LUGO ALVAREZ<br>Respondent / Debtor in Possession<br><br>JOSE CARRION MORALES, Chapter 13<br>Trustee. | CHAPTER  13<br><br>INDEX _____<br><br>**Of acts against property under 11 USC §362(d)(1)(2)(A)(B)** |

## AMENDED MOTION  REQUESTING LIFT OF AUTOMATIC STAY FOR CAUSE

TO THE HONORABLE COURT:

COMES NOW creditor, ORIENTAL BANK & TRUST, previously EUROBANK represented by the undersigned attorney, and most respectfully states:

### JURISDICTION

1.      This motion is brought before this Honorable Court pursuant to Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedures, Local Rule 4001, and Section 362(d) of the Bankruptcy Code, to lift the automatic stay of 11 USC §362(a).

2.      Movant is a secured creditor of this case, being the holder in due course of a Security Agreement over debtor motor vehicle, hence it is also a party in interest in this case.

3.    Mr. JOSE CARRION MORALES, Esq., is included in the instant matter in his official capacity as Chapter 13 Trustee.

## THE FACTS

3. On April 8, 2010 debtor filed this petition for relief under Chapter 13 of the Bankruptcy Code.

4.    Oriental Bank And Trust, previously Eurobank, is a secured creditor of the above named debtor as the holder of a security agreement entered into with this party for the purchase of a motor vehicle (boat). (See Financing Agreement and First Preferred Mortgage *Exhibit I* and *II*)

5.    The description of the motor vehicle, contract number, purchase price, balance owed, pre-petition and post-petition arrears, is the following:

| Description of Equipment | Registration | Contract No. | Oustanding Balance | Pre-Petition Arrears | Post-Petition Arrears |
|---|---|---|---|---|---|
| Viking 35 Convertible, named "Sand Dollar" | "Hull Number" VKY35796M81A | Eurobank #264011897 | *as of 6/29/2010  $59,673.55 | $18,127.26 | *as of 6/29/2010  $2,299.60 |

6.    Movant security agreements were duly registered in the State Department of the Commonwealth of Puerto Rico, as required by law. (*Exhibit III*).

7.    Debtors have continued to possess and use the equipment hereinabove described, which is subject to the security agreement, without making the monthly payments for principal and interest, affecting the secured position of this creditor, whose loan balance is not being reduced at the same time the collateral is deteriorating, depreciating and in danger of being lost or totally damaged. (See copies of the Certified Statement of Account of these leases, *Exhibit IV.*

8.    *Debtor's Chapter 13 Plan fails to include a provision for the payment of this debt.*

## LIFT OF THE AUTOMATIC STAY

9.    Section 362(d)(1) of the Bankruptcy Code [11 USC §362(d)(1)] states as follows:

> "(d)  On request of a party in interest and after notice and a hearing, the court shall grant relief of the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>     (1) **for cause**, including the lack of adequate protection of an interest of such party in interest; (emphasis added).

10.    Relief from stay is available to a party with interest in property of the estate when the party's interest is not adequately protected. Lack of adequate protection constitutes cause to grant relief from stay.

11.    Failure by the debtor of making the regular payments of a loan is a way of denying the adequate protection to which a secured creditor is entitled pursuant to 11 USC 361. The periodic payments are needed to compensate the creditor for any decrease in the value of the collateral. See In re Casen, 190 B.R. 917, 928 (Bankr. N.D. Ala. 1995); In re 354 East 66th St. Realty Corp., 32 C.B.C. 2d 1609, 1611-13; 177 B.R. 776, 781-82 (Bankr. E.D.N.Y. 1995).

12.    Debtor's failure to continue with the monthly installments of the Financial Agreement and his failure to include in his plan a provision for the payment of movant's loan, constitute cause for the lifting of the automatic stay .

13.    Taking into consideration the facts above stated, it is appearing creditor's contention that sufficient cause exists to lift the automatic stay in favor of Movant

pursuant to Section 362(d)(1), supra, allowing appearing creditor to continue the foreclosure procedures of the security agreement of the above described equipment.

14.     Attached is copy of the Declaration under Service Member Civil Relief Act for debtor Waldemar Lugo Alvarez. The declarations reflect that this debtor is not presently active in the U.S.A. Armed Forces.

WHEREFORE, it is respectfully requested from this Honorable Court to grant this motion and to enter an Order lifting the automatic stay in favor of Movant.

## NOTICE

**Notice is here given to all creditors and parties in interest** that you have fourteen (14) days from service of this motion to file an answer and /or to objects to it. If no timely answer or objection is filed, an order may be entered granting the relief requested in the motion, lifting the stay in favor of movant.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System. Copy of the motion and the notice require by Local Rules will be send by Regular Mail to the following:   **(1)** the debtor; **(2)** debtor's counsel;**(3)** the Office of the US Trustee; **(4)**  all parties with liens of record, or any other party known to the movant claiming an interest in the property;

In San Juan, Puerto Rico, this 25 day of September, 2010.

**s/ CARLOS R. SOSA PADRO, ESQ.**
 USDC-PR 205112
 Attorney for Creditor Eurobank
 **CARLOS R. SOSA PADRO LAW OFFICE**
 PO Box 191682
 San Juan, PR 00919-1682
 Tel. 250-0081, Tel/Fax 250-0078
 E-Mail:  csosalaw@gmail.com

## CONTRATO DE FINANCIAMIENTO

En la ciudad de San Juan, Puerto Rico hoy 23 de mayo del 2001.

### COMPARECEN

DE UNA PARTE: Como la parte "DEUDORA", **WALDEMAR LUGO ALVAREZ**, con Seguro Social Número 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 y **MARIA DE LOS ANGELES CURCIO LOPEZ**, con Seguro Social Número 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, **ambos mayores de edad, casados entre sí, propietarios y vecinos de San Juan, Puerto Rico.**

Y DE LA OTRA PARTE: **EUROBANK**, un banco organizado y existente bajo las leyes del Estado Libre Asociado de Puerto Rico, número de seguro social patronal **66-0375237**, con oficina principal en la Avenida Muñoz Rivera #270, 1er piso, Hato Rey, Puerto Rico, representado en este acto por sus oficiales debidamente autorizados(as), **JOSE LUIS OLIVELLA CONDE**, con Seguro Social Número 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, mayor de edad, casado, ejecutivo y vecino de San Juan, Puerto Rico.

Las partes comparecientes mencionadas, libremente

### EXPONEN

POR CUANTO, la parte DEUDORA ha solicitado del BANCO financiamiento, créditos y acomodos financieros que son necesarios para llevar a cabo sus propósitos, a lo que ha accedido el BANCO sujeto al fiel y estricto cumplimiento por parte de la parte DEUDORA de todos los términos y condiciones que se mencionan en el presente contrato y aquellos términos y condiciones adicionales que el BANCO pueda, razonablemente, requerir.

En su virtud, los comparecientes:

### OTORGAN

PRIMERA: <u>Cantidad total del crédito</u>: Sujeto a los términos y

**OCHENTA Y CUATRO MIL DOLARES ($84,000.00)**, de cuya suma total responderá la parte DEUDORA con todos sus bienes y activos presentes y futuros. La suma total antes mencionada se adelantará por el BANCO en la forma que a continuación se indica:

### Préstamo a Término:

1. Un Préstamo a Término por la suma principal de **OCHENTA Y CUATRO MIL DOLARES ($84,000.00)**, el cual será evidenciado por un Pagaré expedido por la parte DEUDORA, pagadero a la orden del BANCO al desembolso de dicho préstamo, dentro e un término de **siete (7) años.**

### Intereses a Regir:

2.- El balance de principal adeudado devengará intereses a razón del **diez porciento (10%) anual fijo.**

### Repago:

3.- Mediante un plan de pagos de ochenta y cuatro (84) mensualidades de MIL DOLARES ($1,000.00) cada uno de ellos para ser aplicados al balance de principal existente. Conjuntamente con cada uno de los pagos antes referidos se realizará el pago simúltaneo correspondiente a los intereses vencidos y acumulados sobre el balance de principal adeudado, a razón del interés fijado.

Dichas mensualidades comenzarán conforme a lo establecido en el Pagaré Operacional que habrá de ser suscrito entre la parte DEUDORA y el BANCO, a menos que ocurriera cualquiera de los motivos consignados más adelante en este Contrato que facultan al BANCO a acelerar el vencimiento del préstamo.

### Propósito:

4.- El crédito concedido a la parte DEUDORA hasta la suma indicada en el párrafo 1 anterior, será utilizado por la DEUDORA para la compra del Vessel dado en garantía.

### Penalidad de Prepago:



vendrá obligada a pagar una indemnización al BANCO equivalente al porciento establecido y que corresponda en el anejo del pagaré operacional del Banco suscrito al efecto junto al pagaré operacional.

**Débitos Bancarios:**

6.- Respecto a los pagos que viene obligada a realizar la parte DEUDORA en virtud del presente acuerdo, se conviene expresamente que el BANCO podrá cargar o debitar, a cualquier cuenta de cheques y/o depósitos que la parte DEUDORA tuviera con el BANCO, aquella cantidad que resultara necesaria para satisfacer los pagos correspondientes a intereses vencidos y/o el pago de principal vencido(s) que no fuera(n) pagados al BANCO dentro del término de diez (10) días de la fecha en que dichos intereses o pagos de principal sean pagaderos y exigibles.

SEGUNDA: Garantías.

1. Todo(s) préstamo(s) y adelanto(s) que haya efectuado o efectuare en adelante el Banco bajo el presente contrato, sus intereses al tipo pactado, y sus créditos para costas, gastos y honorarios de abogados, estará(n) garantizado(s) solidariamente con la(s) siguiente(s) colateral(es) o garantía(s):

**a) First Preferred Mortgage, otorgado en esta misma fecha, ante el Notario Rafael Maldonado Nicolai, en virtud del Testimonio Número** 18666

Estas garantías se mantendrán íntegras y vigentes mientras se le adeude al BANCO alguna suma de dinero adelantada o prestada, más sus correspondientes intereses y cargos por servicios estipulados, y hasta que la parte DEUDORA satisfaga en su totalidad las obligaciones asumidas bajo el presente contrato.

TERCERA: Representaciones y Garantías: Para inducir al BANCO a concederle el préstamo a la parte DEUDORA y aceptar la garantía, la parte DEUDORA asegura y garantiza que:

(a) No hay causas, casos o procedimientos pendientes o según el mejor criterio de la parte DEUDORA amenazando en contra de o que afectan a la parte DEUDORA, ante ningún tribunal o

resultar en cualquier cambio material adverso a la parte DEUDORA.

(b) Los estados financieros de la parte DEUDORA, previamente sometidos al BANCO, correctamente exponen la condición financiera de la parte DEUDORA a dicha fecha y desde la fecha del estado financiero no ha ocurrido cambio material **adverso** en su situación financiera.

(c) La parte DEUDORA ha radicado todas las planillas de contribuciones que viene obligada a radicar y ha provisto para el pago de cualesquiera contribuciones de las que pudiera resultar responsable o conforme con cualquier imposición recibida por la misma.



(d) La parte DEUDORA representa que posee todas las licencias, permisos, autorizaciones, y que está debidamente autorizada a hacer negocios bajo las leyes de Puerto Rico y que a esta fecha no adeuda contribuciones o arbitrios de clase alguna al Gobierno de Puerto Rico, ni al de Estados Unidos.

CUARTA: <u>Condiciones Precedentes al Préstamo:</u> La obligación del BANCO de efectuar el préstamo aquí dispuesto está sujeto al cumplimiento por la parte DEUDORA de sus compromisos bajo el presente contrato en o antes de la fecha del préstamo o desembolso y a la satisfacción de las siguientes condiciones:

(a) Las representaciones y garantías contenidas en este contrato son veraces y correctas en y a la fecha de cada desembolso del préstamo con el mismo efecto que si dichas representaciones y garantías hubieran sido hechas en o a dicha fecha;

(b) Todos los detalles y trámites legales con relación a las transacciones contempladas por este contrato serán en forma y sustancia satisfactorias a los abogados del

*condiciones aquí existentes;*

QUINTA: *Obligaciones Afirmativas.* Mientras la parte DEUDORA le adeude al BANCO alguna obligación por el Pagaré, este contrato o cualquier otra obligación o acreencia, la parte DEUDORA pacta, conviene y estipula que:

1. Permitirá a cualquier oficial, empleado o representante autorizado por el BANCO a visitar y discutir sus asuntos, finanzas y cuentas con oficiales de la parte DEUDORA, todo ello en horas razonables y cuantas veces el BANCO razonablemente lo requiera;

2. La parte DEUDORA pagará oportuna y puntualmente todas las contribuciones sobre sus bienes muebles, patentes "fees", cargas, arbitrios y derechos de licencias que el Gobierno de Puerto Rico o el Gobierno de los Estados Unidos de América le impongan sobre sus propiedades, ingresos y pagos de nómina; disponiéndose que la parte DEUDORA podrá cuestionar la validez de cualquier contribución, arbitrio "fee", cargos, patentes, derechos de licencia o derrama o su cuantía, pudiendo litigar de buena fe su responsabilidad contributiva, siempre que establezca(n) las correspondientes y adecuadas reservas.

3. La parte DEUDORA mantendrá(n) asegurada(s) en todo momento la(s) propiedad(es) mueble(s) ofrecida(s) en garantía, contra pérdidas o daños por incendio, huracán, terremoto, robo, inundación, vandalismo o cualquier otro riesgo que se acostumbra asegurar. Todas las pólizas que se obtengan por virtud de este inciso serán de compañías reconocidas y aceptables al BANCO, disponiéndose que la parte DEUDORA entregará de tiempo en tiempo y según lo requiera el BANCO, copia de todas las pólizas de seguro requeridas y solicitará que en cada póliza se inserten endosos uniformes de pérdida ("standard loss payable endorsements") a favor del BANCO, que sean satisfactorios a éste y someterá al BANCO evidencia de pago de las primas correspondientes; también

*Estado.*

*4. La DEUDORA mantendrá vigente las licencias requeridas para la operación de la embarcación marítima dada en garantía. A tales efectos, se obliga a suplir al BANCO cualquier documento y/o recibo de pago relacionado(s).*

*5. La parte DEUDORA mantendrá la embarcación marítima que garantiza(n) el préstamo en uso manteniendo el buen funcionamiento de la (s) misma(s) y efectuando, de tiempo en tiempo, las reparaciones ordinarias y necesarias o extraordinarias, y aquellas renovaciones, adiciones, sustituciones, mejoras y obras útiles que resulten necesarias para preservar y mantener su valor de forma tal que la operación que en ella(s) llevan a cabo se realicen en todo momento de forma provechosa y no se alteren, destruyan, transfieren o utilicen las mismas para cualquier otro fin que no sea aquél para el cual ahora se utilizan permitiendo al BANCO, sus agentes o representantes inspeccionar las mismas cuantas veces resulte razonablemente necesario, y cumpliendo con todos los requisitos razonables que el BANCO pueda exigir en relación con dicha inspección.*




*6. Declaración Relacionada con el Problema del Año 2000. La DEUDORA declara y garantiza al BANCO que:*

*(i) en el curso normal de la operación de su negocio usa programas y equipos de computadoras para el almacenaje y procesamiento de datos (conocido en conjunto como "El Sistema de Computadora de la DEUDORA") que son importantes para la operación de su negocio y que se encuentran en condiciones adecuadas para el uso propuesto;*

*(ii) está claramente consciente de la existencia del problema del año 2000 en el campo de la computación que consiste en general en el hecho de que los programas y equipos de*

comenzarán a operar de forma errática (el "Problema del Año 2000").

(iii) la DEUDORA está tomando, o ha tomado, todas las acciones y medidas necesarias y apropiadas para enfrentarse y remediar todas, si alguna, las deficiencias en el Sistema de Computadoras de la DEUDORA relacionadas con el Problema del Año 2000 las cuales pueden esperarse que afecten adversamente su negocio o su habilidad para cumplir con las obligaciones contraídas por virtud de este Contrato, y

(iv) - _Cláusula Contractual Relacionada con el Problema del Año 2000._ La DEUDORA se compromete y acuerda con el BANCO que ejecutará, reconocerá cuando sea apropiado y entregará, o hará que sea ejecutado, reconocido cuando sea apropiado y entregado de tiempo en tiempo, a pedidos del BANCO, todos los documentos o certificaciones, que según la opinión del BANCO sean razonablemente necesarios o aconsejables para llevar a cabo la intención o propósito de las declaraciones o garantías que se exponen anteriormente.

(v) - _Responsabilidad del BANCO con el Problema del Año 2000._ En cuanto a las obligaciones del BANCO, el BANCO se compromete y acuerda llevar a cabo todos los esfuerzos comerciales razonables para que el Problema del Año 2000 no afecte indebidamente ni sobrecargue las provisiones del presente contrato referente a los servicios del BANCO a la DEUDORA; disponiéndose sin embargo, que en cualquier momento en que los sistemas del BANCO, programas y equipos de computadoras, causen o se sometan a cualquier trastorno temporero o mal funcionamiento, la única obligación del BANCO conforme a este contrato será restaurar sus sistemas y realizar cualquier tarea que de lo contrario se vea impedida u obstruída por el Problema del Año 2000, dentro de un período de tiempo razonable.

(vi) - Exclusión. Las Partes acuerdan que l

*llegada del Año 2000.*

*SEXTA: Causas de Incumplimiento. Las obligaciones asumidas por el BANCO bajo este contrato terminarán o cesarán inmediatamente y éste podrá exigir o reclamar el pago inmediato de todas las sumas que le adeude la parte DEUDORA bajo este contrato, sin necesidad de presentación, demanda, protesto o aviso de clase alguna, lo cual expresamente el deudor renuncia, si ocurriera cualquiera de las siguientes circunstancias:*

*1. que cualquiera representación o garantía hecha en este contrato o en sus anejos por la parte DEUDORA, o en cualquier certificado, estado financiero o documento sometido por la parte DEUDORA al BANCO de acuerdo a los términos de este contrato, resultare falso o engañoso en cualquier aspecto material al momento de hacerse;*

*2. que la parte DEUDORA no pagare los intereses o el principal, a su fecha de vencimiento correspondiente;*

*3. que la parte DEUDORA quedare insolvente o no pudiera pagar sus deudas según éstas venzan o que la parte DEUDORA radicara una petición de quiebra o se radique contra la parte DEUDORA una petición involuntaria de quiebra, bajo cualquiera de los capítulos de la Ley Federal de Quiebras;*

*4. que la parte DEUDORA cediera parte de sus bienes a sus acreedores o consintiera a una sindicatura para tales propósitos;*

*5. que se cancelara cualquiera de las garantías ofrecidas como colateral a este préstamo.*

*6. la radicación de cargos contra la parte DEUDORA o el recibo de alguna notificación por el BANCO de alguna investigación gubernamental en relación con cualquier asunto que pueda resultar en la confiscación o incautación ("Forfeiture") de bienes de la parte DEUDORA.*

*7. la omisión por parte de la DEUDORA de procurar, obtener y*

*prestación de sus servicios.*

8. *si cualquier tribunal competente con jurisdicción sobre la materia emitiere una orden de entredicho provisional o permanente contra la DEUDORA prohibiendo las operaciones de sus negocios.*

9. *si la DEUDORA omitiere el pago, a su vencimiento, de cualquier contribución, impuesto o prima de seguro requeridale por el BANCO o rehusara asegurar sus propiedades según se lo requiere el BANCO.*

10. *la omisión por parte de la DEUDORA en remediar o curar dentro de un plazo de treinta (30) días de su ocurrencia, previa notificación escrita por parte del BANCO, de cualquier incumplimiento a los términos, cláusulas y condiciones de este contrato no relacionadas con las obligaciones de pago los cuales deben cumplirse estrictamente a su vencimiento según pactado.*

11. *si ocurriese cualquier deterioro en la condiciones de la empresa y/o negocio de la DEUDORA que, en la opinión del BANCO, resultase en un cambio material adverso que pudiera afectar la capacidad de la misma para cumplir con sus obligaciones y continuar manejando sus negocios como hasta el presente, y dicho evento no pudiese, en la opinión del BANCO, curarse en un plazo razonable.*

*SEPTIMA:* <u>Aceleración.</u> *Cualquier incumplimiento por parte del Deudor en el pago del principal y/o intereses así como el incumplimiento por parte del Deudor o de cualquier otra obligación asumida bajo el presente Contrato, o bajo cualquier otro acuerdo con el Banco, facultará al Banco, para que a su discreción deje sin efecto el Contrato y/o declare y dé por vencido el pago de cualquier suma adelantada, y exija el pago inmediato del total adeudado. El no ejercicio de este derecho no se entenderá como una renuncia en el caso de cualquier tipo de incumplimiento*

términos de este Contrato, al ocurrir un evento o cualquier causa de incumplimiento bajo los términos de este contrato o en cualquiera de las obligaciones asumidas por la DEUDORA con el BANCO, el BANCO quedará expresamente facultado, además de disponer de todos los otros derechos que tenga en ley y bajo los términos de este Contrato para: (i) tomar posesión de la propiedad mueble dada en garantía de las obligaciones de la parte DEUDORA bajo los términos de ese Contrato, si alguna, sin tener que incoar procedimiento judicial y/o (ii) iniciar la acción judicial correspondiente para la ejecución de las obligaciones de la parte DEUDORA y/o de las garantías dadas para asegurar las obligaciones de la parte DEUDORA.

En el caso de que el BANCO escoja reposeer los Bienes Muebles dados en garantía sin iniciar un procedimiento judicial, el BANCO, a su discreción, podrá: (i) requerir que la parte DEUDORA haga cualquier gestión necesaria para poner la colateral a disposición del BANCO en un lugar designado por el BANCO que sea razonablemente conveniente para ambas partes; o (ii) inutilizar la propiedad sin remoción; y disponer de la propiedad según se indique en el documento que crea el gravamen mobiliario, conforme a las disposiciones del Capítulo 9 de la Ley de Transacciones Garantizadas (Ley Núm. 208 del 17 de agosto de 1995, según enmendada).

Si el BANCO decidiera reposeer los Bienes Muebles que componen la colateral según aquí expuesto, la parte DEUDORA vendrá obligada a firmar todos aquellos documentos necesarios para ceder efectivamente la titularidad de los mismos a favor del BANCO

NOVENA: _Otras Condiciones_. Mientras esté pendiente de pago cualquier préstamo o adelanto efectuado bajo los términos de este contrato:

2. _Informes_. Mientras esté pendiente de pago alguna suma adelantada o prestada bajo este contrato, la parte DEUDORA, someterá a éste un estado financiero del negocio y uno personal, debidamente compilado por un Contador Público Autorizado que sea aceptable al BANCO. Para propósitos de esta obligación, la parte DEUDORA deberá entregar al BANCO los mencionados informes dentro de los NOVENTA (90) días de terminar su año fiscal.

3. _Sobregiros_. No se permitirán sobregiros en las cuentas corrientes del negocio.

4. _Cuentas Bancarias:_ La parte DEUDORA mantendrá con el BANCO sus principales cuentas bancarias corrientes para los gastos operacionales normales, así como aquellas cuentas de reserva que fueran necesarias para el pago de las primas de los seguros para el tipo de negocio que conduce la DEUDORA y aquellas cuentas marginales que fueran necesarias para el financiamiento de cuentas por cobrar.

5. _Utilización de fondos provenientes de Financiamiento._ _Actividades Elegibles._

La parte DEUDORA se compromete a utilizar los fondos provenientes del financiamiento objeto del Contrato para los usos y propósitos que se mencionan en la parte expositiva del Contrato. De cualificar dichos usos y propósitos como Actividades Elegibles y en cualquier momento durante la vigencia del financiamiento objeto del Contrato, la Oficina del Comisionado de Instituciones Financieras o cualquier otra autoridad competente determinara que la parte DEUDORA no utilizó dichos fondos, o parte de ellos, en Actividades Elegibles, la parte DEUDORA deberá satisfacer de inmediato al BANCO, a su requerimiento, todo costo, multa, cargo, imposición o penalidad que dichas autoridades puedan imponer al BANCO. De igual forma la parte DEUDORA se obliga a satisfacer al BANCO cualquier diferencial negativo que sufra el BANCO en el

cualquier aumento o reajuste en la Tasa de Interés aplicable serán
determinados por el BANCO y notificados a la parte DEUDORA.

6. <u>Cumplimiento de especificaciones, ordenanzas y
reglamentos; permisos de uso.</u> La parte DEUDORA conviene y
estipula que todos los trabajos que sean necesarios para cumplir
con sus obligaciones contractuales y servicios profesionales
cumplirá con, y observará todas las leyes, ordenanzas, reglamentos
y requisitos de todas las agencias gubernamentales pertinentes,
incluyendo todas las reglamentaciones y requisitos que actualmente
están vigentes o puedan estarlo en el futuro y que sean necesarios
para la operación de su negocio.

7. <u>Notificaciones Sobre Reclamaciones o Litigios</u>. El DEUDOR
notificará de inmediato al BANCO de cualquier reclamación o
litigio que se radique o que exista una posibilidad razonable de
que se radique en su contra, conjuntamente con una opinión legal
de su abogado respecto al posible resultado de dicha reclamación o
litigio.



DECIMA: <u>Obligaciones restrictivas</u>. Mientras esté pendiente
de pago alguna suma que el BANCO adelante o preste bajo este
contrato, la parte DEUDORA <u>no</u> podrá sin el previo consentimiento
por escrito del BANCO:

1. incurrir, crear, asumir, garantizar o endosar cualquier
deuda u obligación, excepto las obligaciones corrientes y usuales
con suplidores ("trade creditors");

2. vender, alquilar, transferir o disponer de cualquiera de
sus activos, excepto en el curso ordinario de los negocios;

3. ceder o establecer gravámenes a favor de terceras personas
sobre sus inventarios y cuenta por cobrar o vender, ceder o
disponer de cualquier activo negociable; prestar o adelantar suma
alguna de dinero a persona alguna, sea natural o jurídica, que
pueda afectar su situación financiera actual.

4. dedicarse a una actividad comercial o a un negocio que no

5. *vender, hipotecar, pignorar, gravar o enajenar de manera alguna la(s) propiedad(es) mueble(s) que sirve(n) como colateral del financiamiento.*

*Notificaciones. Cuando bajo este contrato se requiera enviar alguna notificación escrita, la misma se efectuará enviándose por correo ordinario a las direcciones que de tiempo en tiempo las partes indiquen por escrito:*

**En cuanto a la parte DEUDORA**

**WALDEMAR LUGO ALVAREZ**
**AVENIDA LA SIERRA #300**
**BOX 37**
**SAN JUAN PR   00926**

**En cuanto al BANCO:**

**EUROBANK**
**SUCURSAL SAN FRANCISCO**
**ATT. SR. JOSE LUIS OLIVELLA CONDE**
**VILLAS DE SAN FRANCISCO III**
**AVE. DE DIEGO NUM. 85**
**RIO PIEDRAS, PR   00927**

*UNDECIMA: Representaciones Adicionales:   La parte DEUDORA representa y garantiza al BANCO que:*

*1.   Está debidamente autorizada a operar bajo las leyes de Puerto Rico y que a esta fecha no adeuda contribuciones al Gobierno del Estado Libre Asociado de Puerto Rico ni al Gobierno de los Estados Unidos de América.*

*2.   La parte DEUDORA no se halla en incumplimiento bajo ningún contrato con el BANCO o con terceras personas.*

*3.   La parte DEUDORA mediante el presente otorgamiento, releva e indemniza al BANCO de toda responsabilidad y obligación en relación a toda causa de acción, pleito, litigio, deudas, obligaciones, cuentas, controversias, daños e ilegalidad, multas, imposiciones, pago y cualquier otra materia propia de una causa de acción que tenga como base cualquier violación al Contrato o cualquier falsa representación en torno al mismo por la parte DEUDORA.*

representa y garantiza que ha cumplido cabalmente con todas las disposiciones de la misma y que no ha ocurrido ni existe ningún evento reportable ("Reportable Event", según se define en ERISA) con respecto a cualquier plan de retiro o pensiones de la parte DEUDORA que esté reglamentado por ERISA.

DUODECIMA: <u>Disposiciones Misceláneas</u>:

1. El no ejercicio por parte del BANCO de los derechos concedídoles bajo este contrato no se considerarán como una renuncia a los mismos.

2. Todos los convenios, acuerdos y representaciones contenidos en este contrato, sus anejos y en los certificados o documentos que se le entreguen al BANCO por disposición de este contrato se considerarán materiales a esta transacción.



3. Los derechos bajo este contrato no podrán ser cedidos ni en todo ni en parte por la parte DEUDORA, pero todo los términos y disposiciones de este contrato beneficiarán a los sucesores y cesionarios del BANCO.

4. Las cláusulas de este contrato son separables. En el caso de que judicialmente se determinara la nulidad o invalidez de alguna de las cláusulas del Contrato, dicha determinación no afectará la validez de las restantes, las cuales continuarán en pleno vigor.

5. Ninguna enmienda, modificación, terminación, renuncia o tolerancia de cualquiera de las disposiciones de este contrato tendrá validez o eficacia legal alguna a menos que la misma conste en un escrito debidamente suscrito por un Oficial Autorizado del BANCO.

6. Este contrato se interpretará y cumplirá de acuerdo a las leyes del Estado Libre Asociado de Puerto Rico.

EN TESTIMONIO DE LO CUAL, las partes otorgan este contrato en el lugar y en la fecha que se menciona al comienzo.

EUROBANK

Por: _____
JOSE LUIS OLIVELLA CONDE

DEUDOR

_____
WALDEMAR LUGO ALVAREZ

_____
MARIA DE LOS ANGELES CURCIO LOPEZ

**TESTIMONIO NUMERO:** *18665*

    *Reconocido y suscrito ante mi por Waldemar Lugo Alvárez y María de Los Angeles Curcio López y como oficial autorizado de EUROBANK, José Luis Olivella Conde, todos de las circunstancias personales antes expresadas, a quienes doy fe de conocer personalmente. En San Juan, Puerto Rico a 23 de mayo del 2001.*

_____
NOTARIO PUBLICO



RAFAEL MALDONADO NICOLAI
PUERTO RICO
ABOGADO NOTARIO

THE FIRST PREFERRED MORTGAGE, on the vessel "Sand Dollar"

dated <u>May 23, 2001</u>
Amount of Mortgage <u>$84,000.00</u>
Maturity Date<u>_____</u>

and made by **WALDEMAR LUGO ALVAREZ**, Social Security Number 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, and his wife **María de los Angeles Curcio López**, Social Security Number 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, both of legal age, property owners and residents of San Juan, Puerto Rico, (100% owner), (hereinafter called collectively "Owners"), to **EUROBANK** (100%), Call Box 191009, San Juan, Puerto Rico 00919-1009, (hereinafter called "Mortgagee").

## WITNESSETH:

WHEREAS, the maker, Mortgagor herein, is the sole owner of the whole of the vessel (if more than one vessel is mortgaged hereunder, the term "vessel" means each such vessel) hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by a promissory note dated May 23, 2001 in the principal amount of $84,000.00, payable to the order of Mortgagee as follows:

> **PER TERMS AND CONDITIONS SET FORTH IN THAT CERTAIN PROMISSORY NOTE REFERRED TO ABOVE, A COPY OF WHICH IS ATTACHED HERETO AND MADE A PART OF THIS FIRST PREFERRED SHIP'S MORTGAGE AS EXHIBIT "A".**

NOW, THEREFORE, in consideration of the promises and for other good and valuable considerations, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the Vessel Tug (type of Vessel) named below and further described in her(their) last marine document(s) issued and identified as follows:

| Name | Official Number | Gross Tons | Net Tons | Hull Number |
|------|-----------------|------------|----------|-------------|
| Sand Dollar | 922003 | 17 | 13 | VKY 35796M81A |

together with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference.

TO HAVE AND TO HOLD all and singular the above describe vessel unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920, as amended.

Owner agrees to pay said indebtedness, with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

## ARTICLE I - Particular Covenants of Owner

Owner covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation Owner is duly organized and is and shall continue in good standing under the laws of the Commonwealth of Puerto Rico and authorized to do business and in good standing in any other State wherein Owner regularly does business.





2. Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3. Owner shall at his(its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employee's compensation and/or other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms by payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefor have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

4. Owner shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State, the Commonwealth of Puerto Rico, or the United States Virgin Islands and/or any other jurisdiction wherein operated, and/or of the limits of the United States save on voyages with the intents of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel.

5. Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or

salvage.

6. Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7. Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.



9. Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's related accounts and records, shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.



10. Owner shall not, without the prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for America vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or dissolve.

11. From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (c) of Section I of Article II.

## ARTICLE II - Default

1. In any one or more of the following events, herein termed "events of defaults", viz:

(a) Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8 and 10 of Article I hereof, or attempt to violate Sections 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein, or

(b) Commission of an act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage,

3

Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof;

then, and in every such case, Mortgagee may:

(A)  Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest until full payment thereof at the same interest rate provided for in the Promissory Note, the payment thereof secured hereby;

(B)  Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder, and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing, and/or

(C)  Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and/or Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his(its) name and stead to make all necessary transfers of the vessel thus sold.

2.  In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3.  Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee.  No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default.  In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4.  The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST:  To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the same interest rate provided for in the Promissory Note, the payment thereof secured hereby; and to provide adequate indemnity against any liens for

4

which priority over this mortgage is claimed;

SECOND: To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at the same interest rate provided for in the Promissory Note, the payment thereof secured hereby, and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

## ARTICLE III - Possession Until Default

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

## ARTICLE IV - Sundry Provisions

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Owner herein "his" shall mean "their".

FUTURE ADVANCES. This mortgage is executed for the purpose of securing not only the payment of the above described note, but also to secure all future advances made by the holder of said note to the Mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has cause this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized, or were applicable Mortgagee has executed this Mortgage on behalf of Mortgagor pursuant to a power of attorney delivered by Mortgagor to Mortgagee.

Executed on this 23rd day of May 2001.

EUROBANK

By: JOSE LUIS OLIVELLA CONDE

By: WALDEMAR LUGO ALVAREZ

MARIA DE LAS ANGELES CRUCIO LOPEZ

ACKNOWLEDGMENT

5

AFFIDAVIT NUMBER: *18666*

SWORN AND SUBSCRIBED TO BEFORE ME BY WALDEMAR LUGO ALVAREZ AND HIS WIFE MARIA DE LOS ANGELES CURCIO LOPEZ OF THE PERSONAL CIRCUMSTANCES ABOVE MENTIONED AND JOSE LUIS OLIVELLA CONDE AS LEGAL REPRESENTATIVE OF EUROBANK, WHO IS OF LEGAL AGE, MARRIED EXECUTIVE AND A RESIDENT OF SAN JUAN, PUERTO RICO ALL TO ME PERSONALLY KNOWN.

IN SAN JUAN, PUERTO RICO THIS 23rd. day OF MAY, 2001.


RAFAEL MALDONADO NICOLAI
NOTARY PUBLIC
MY COMMISSION IS AD VITAM



OMB APPROVED
2115-0110

| DEPARTMENT OF TRANSPORTATION U.S. COAST GUARD CG-1340 (REV. 9-93) | BILL OF SALE | THIS SECTION FOR COAST GUARD USE ONLY |
|---|---|---|

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED / FILED

| 1. VESSEL NAME  SAND DOLLAR | 2. OFFICIAL NUMBER OR HULL ID NUMBER  922003 | 11 JUN '01     -0 : 03 AM |
|---|---|---|

RECORDED

3. NAME(S) AND ADDRESS(ES) OF SELLERS:
JOSE L. MUNDO MEDERO

    BARRIO DAGUAO
    BUZON  192
    NAGUABO P.R. 00918

DOCUMENTATION BOOK 0460  PAGE 222

RECORDED:

BOOK:                          PAGE:

PORT (IF NOT FILING PORT)

3A. TOTAL INTEREST OWNED (IF LESS THAN 100%)          %

DOCUMENTATION OFFICER

4. NAME(S) AND ADDRESS(ES) OF BUYER(S) AND INTEREST TRANSFERRED TO EACH:
WALDEMAR LUGO ALVAREZ & MARIA DE LOS ANGELES CURCIO LOPEZ
AVE LA SIERRA #300
BOX 37
SAN JUAN, PR 00926

THE SALE OF THIS VESSEL WAS FINALIZED FEB. 19, 200 AND THIS BILL OF SALE IS BEING EXECUTED FOR COAST GUARD DOCUMENTATION PURPOSES ONLY.

4A. TOTAL INTEREST TRANSFERRED (100% UNLESS OTHERWISE SPECIFIED)          %

4B. MANNER OF OWNERSHIP. UNLESS OTHERWISE STATED HEREIN, THIS BILL OF SALE CREATES A TENANCY IN COMMON, WITH EACH TENANT OWNING AN EQUAL, UNDIVIDED INTEREST. CHECK ONLY ONE OF THE FOLLOWING BLOCKS TO SHOW ANOTHER FORM OF OWNERSHIP.

☐ JOINT TENANCY WITH RIGHT OF SURVIVORSHIP      ☐ TENANCY BY THE ENTIRETIES      ☒ COMMUNITY PROPERTY

☐ OTHER (DESCRIBE):

5. CONSIDERATION RECEIVED:

(ONE DOLLAR AND OTHER VALUABLE CONSIDERATION UNLESS OTHERWISE STATED)
6. I (WE) DO HEREBY SELL TO THE BUYER(S) NAMED ABOVE, THE RIGHT, TITLE AND INTEREST IDENTIFIED IN BLOCK 4 OF THIS BILL OF SALE, IN THE PROPORTION SPECIFIED HEREIN.
VESSEL IS SOLD FREE AND CLEAR OF ALL LIENS, MORTGAGES, AND OTHER ENCUMBRANCES OF ANY KIND AND NATURE, EXCEPT AS STATED ON THE REVERSE HEREOF. VESSEL IS SOLD TOGETHER WITH AN EQUAL INTEREST IN THE MASTS, BOWSPRIT, SAILS, BOATS, ANCHORS, CABLES, TACKLE, FURNITURE, AND ALL OTHER NECESSARIES THERETO APPERTAINING AND BELONGING, EXCEPT AS STATED ON THE REVERSE HEREOF.

| 7. SIGNATURES OF SELLER(S) OR PERSON(S) SIGNING ON BEHALF OF SELLER(S)  BY ⬤ _Jose L. Mundo_ | 8. DATE SIGNED  5-23-01 |
|---|---|

9. NAME(S) OF PERSON(S) SIGNING ABOVE, AND LEGAL CAPACITY IN WHICH SIGNED (E.G., OWNER, AGENT, TRUSTEE, EXECUTOR)

JOSE L. MUNDO MEDERO
    SOLE OWNER

10. ACKNOWLEDGMENT (TO BE COMPLETED BY NOTARY PUBLIC OR OTHER OFFICIAL AUTHORIZED BY A LAW OF A STATE OR THE UNITED STATES TO TAKE OATHS.)          AFFIDAVIT 18664

ON MAY 23, 2001 _____ THE PERSON(S) NAMED IN SECTION 9
ABOVE ACKNOWLEDGED EXECUTION OF THE FOREGOING INSTRUMENT
IN THEIR STATED CAPACITY(IES) FOR THE PURPOSE THEREIN
CONTAINED. PERSONALLY KNOWN [X] OR PRODUCED ID [ ]
TYPE OF IDENTIFICATION _____
SEAL

COMMONWEALTH OF PUERTO RICO
STATE:
COUNTY:          SAN JUAN
NOTARY PUBLIC  X /s/
MY COMMISSION EXPIRES  is ad vitam

PREVIOUS EDITION OBSOLETE

U.S. Department
of Transportation

United States
Coast Guard

Director
National Vessel
Documentation Center

792 T J Jackson Drive
Falling Waters, WV 25419-9502
Staff Symbol: NVDC
Telephone: (800) 799-8362
           (304) 271-2400
Fax:       (304) 271-2405

Rev3/00

## GENERAL INFORMATION FOR OWNERS OF DOCUMENTED VESSELS

Enclosed is the Certificate of Documentation for your vessel. This Certificate IS NOT valid for operation of the vessel until the vessel is marked in accordance with its name, hailing port, and official number. If your document bears only a Recreation endorsement, your vessel may not carry passengers for hire.

OFFICIAL NUMBER: The official number shown on the Certificate, preceded by the abbreviation "NO." must be marked in block-type Arabic numerals at least 3" high on some clearly visible interior structural part of the hull. The number must be permanently affixed so that alteration, removal, or replacement would be obvious and cause some scarring or damage to the surrounding hull area.

NAME AND HAILING PORT*: For RECREATION vessels, the name and hailing port* both must be marked together on some clearly visible exterior part of the hull. For COMMERCIAL vessels, the vessel name must be marked on each bow and the vessel name and hailing port must also be marked on the stern. The markings may be made by the use of any means and materials that result in durable markings. All must be at least 4" in height, made in clearly legible letters of the Latin alphabet or Arabic or Roman numerals. *HAILING PORT marking must include BOTH a place (city) AND the state. Only the state may be abbreviated.

The Certificate of Documentation becomes invalid immediately if there is a change in ownership, vessel name, or hailing port marking and must be returned to this office. The penalty for operation of a vessel with an invalid document is $10,000 per violation. Each day of continuing violation is a separate violation. Unless the Certificate is required to be exchanged, replaced, or canceled, it is valid for one year.

Annual renewal of the endorsement is required. During the month preceding expiration, a Notice of Renewal is mailed to the managing owner at the address of record. Contact our office, not later than two weeks prior to the expiration date, if you have not received the Notice of Expiration. IF YOUR ADDRESS CHANGES AT ANY TIME, YOU MUST NOTIFY US BY MAIL OR FAX. THE RESPONSIBILITY FOR RENEWAL IS UP TO YOU, THE VESSEL OWNER, WITH OR WITHOUT NOTICE.

State and local officials have the right to board documented vessels for law enforcement purposes. Many states require registration of documented vessels for tax and other purposes. You may be required to place a decal on your vessel showing that you have complied with state requirements. Contact state authorities for further information.

OMB APPROVED
2115-0110

PT. OF TRANSP., USCG, CG-1270 (Rev. 9-92)



# UNITED STATES OF AMERICA
## DEPARTMENT OF TRANSPORTATION
## UNITED STATES COAST GUARD

HIN: VKY35796M81A

# Certificate of Documentation

| VESSEL NAME | OFFICIAL NUMBER | HAILING PORT |
|---|---|---|
| SAND DOLLAR | 922883 | SAN JUAN PR |

| GROSS | NET | LENGTH | BREADTH | DEPTH | HULL MATERIAL | SELF PROPELLED |
|---|---|---|---|---|---|---|
| 17 | 13 | 35.0 | 13.0 | 5.7 | FRP | YES |

| PLACE BUILT | YEAR BUILT |
|---|---|
| UNKNOWN | UNKN |

| OWNER | OPERATIONAL ENDORSEMENTS |
|---|---|
| WALDEMAR LUGO ALVAREZ<br>MARIA DE LOS ANGELES CURCIO LOPEZ | RECREATION |

COMPLETE RECORDS ON FILE AT:     NATL VESSEL DOC CTR

MANAGING OWNER

WALDEMAR LUGO ALVAREZ
AVE LA SIERRA 300
BOX 37
SAN JUAN, PR  00926

RESTRICTIONS

NO COASTWISE OR GREAT LAKES LICENSE        2
NO FISHERY LICENSE                         2

ENTITLEMENTS

NONE

REMARKS

NONE

THIS CERTIFICATE MAY NOT BE ALTERED EXCEPT BY AFFIXING OFFICIAL RENEWAL AND ADDRESS CHANGE DECALS ON THE REVERSE.

| ISSUED AT     NATL VESSEL DOC CTR | SIGNATURE AND SEAL |
|---|---|
| ISSUE DATE     JUNE 20, 2001 | *Dorothy G. Montague* |
| THIS CERTIFICATE EXPIRES ON THE LAST DAY OF  JUNE2<br>UNLESS RENEWED BY DECAL ON REVERSE.  DGM | DOROTHY G. MONTAGUE<br>DOCUMENTATION OFFICER |

SN 7530-01-GF2-95

DEPT. OF TRANSP., USCG, CG-1270 (Rev. 5-85)

OMB APPROVED
2115-0110



# UNITED STATES OF AMERICA
## DEPARTMENT OF TRANSPORTATION
## UNITED STATES COAST GUARD

HIN: VEYS5796M81A

# Certificate of Documentation

| VESSEL NAME | OFFICIAL NUMBER | HAILING PORT |
|---|---|---|
| SAND DOLLAR | 922003 | FAJARDO, PR |

| GROSS | NET | LENGTH | BREADTH | DEPTH | HULL MATERIAL | SELF PROPELLED |
|---|---|---|---|---|---|---|
| 17 | 13 | 35.0 | 13.0 | 5.7 | FRP | YES |

| PLACE BUILT | YEAR BUILT |
|---|---|
| UNKNOWN | UNKN |

| OWNER | OPERATIONAL ENDORSEMENTS |
|---|---|
| JOSE L MUNDO MEDERO | RECREATION |

COMPLETE RECORDS ON FILE AT: NATL VESSEL DOC CTR

MANAGING OWNER
JOSE L MUNDO MEDERO
BO DAGUAD
BUZON 192
NAGUABO, PR 00718

RESTRICTIONS
NO COASTWISE OR GREAT LAKES LICENSE     2
NO FISHERY LICENSE     2

ENTITLEMENTS
NONE

REMARKS
NONE

THIS CERTIFICATE MAY NOT BE ALTERED EXCEPT BY AFFIXING OFFICIAL RENEWAL AND ADDRESS CHANGE DECALS ON THE REVERSE.

| ISSUED AT | SIGNATURE AND SEAL |
|---|---|
| NATL VESSEL DOC CTR | *Lana L. Fittry* |
| ISSUE DATE NOVEMBER 15, 1999 | LANA L FITTRY |
| THIS CERTIFICATE EXPIRES ON THE LAST DAY OF NOV00 UNLESS RENEWED BY DECAL ON REVERSE. LLF | DOCUMENTATION OFFICER |

PREVIOUS EDITION OBSOLETE     SN 7540-01-GPO-9570

DEPARTMENT OF
TRANSPORTATION
U.S. COAST GUARD
CG-1332(Rev. 5-82)

# GENERAL INDEX OR ABSTRACT OF TITLE

922003

(2) SAND DOLLAR (Recp:1899)
(3) ELOISE
(Exc: PR 1066 GD)

| GRANTOR | GRANTEE | INSTRUMENT | Kind of instrument and state port conveyed | Date of instrument or event and place of validity | Consideration or amount stated | Received for record | Recorded | Date of endorsement and entry in record of Coast Guard | Port where endorsed |
|---|---|---|---|---|---|---|---|---|---|
| PUERTO RICO CERTIFICATE OF NUMBER PRESENTED; SHOWING LAST OWNERS AS: EMILIO GALINDEZ AND MIRIAM GALINDEZ. | | | | | | | | | |
| Emilio Galindez and Miriam Galindez, Each Owning 50% | Emilio Galindez and Miriam Galindez, Each Owning 50% | B/S | 21 OCT 87 | | OCT 27 1988 3:15pm | PR 98 | OCT 27 1988 12:00PM | | |
| EMILIO GALINDEZ & MIRIAM GALINDEZ, EACH OWN 50% | THE FEDERAL SAVINGS BANK OF PUERTO RICO | PM | ALL | 26oct1987 | $7123.80 | OCT 27 1988 3:15pm | inst 4045 | 11dec1989 12:10pm | |
| THE FEDERAL SAVINGS BANK OF PUERTO RICO | EMILIO & MIRIAM GALINDEZ 50% EACH | 3PM | ALL | 1 sep 2002 | $7123.80 | SEP -6 1989 9:15am | inst 4417 | 11dec1989 12:10pm | |
| EMILIO & MIRIAM GALINDEZ 50% EACH | ELOY VEIGA SILVA & ELENA GONZALEZ VEIGA 50% EACH | B/S | ALL | 15dec1985 | $71238.80 | SEP -6 1989 9:20am | inst 6138 | 11dec1989 12:01pm | |
| ELOY VEIGA SILVA & ELENA GONZALEZ VEIGA 50% EACH | THE FEDERAL SAVINGS BANK OF PUERTO RICO | PM | ALL | 15dec1986 | $40000.00 | SEP -6 1989 9:25am | pm69 | #6925 #6138#.80 | |

This vessel was built at _____ UNASSIGNED in _____ by _____ UNASSIGNED

can appears by _____ DOCUMENTED LAW 46 CFR 67 05-T(0173) to UNKNOWN of _____ PR _____

by _____ UNKNOWN to _____ UNKNOWN

| DEPARTMENT OF TRANSPORTATION U.S. COAST GUARD CG-1258 (REV. 9-87) | APPLICATION FOR INITIAL ISSUE, EXCHANGE, OR REPLACEMENT OF CERTIFICATE OF DOCUMENTATION; REDOCUMENTATION | THIS SECTION FOR COAST GUARD USE ONLY |
|---|---|---|

**CASE NUMBER**

**CHECK #:**

**FEE: $**

NOTE: FILING THIS APPLICATION DOES NOT ENTITLE A VESSEL TO DOCUMENTATION OR TO ANY CHANGES SOUGHT ON A CERTIFICATE OF DOCUMENTATION. OFFICIAL NUMBERS DESIGNATED ON THE BASIS OF THIS APPLICATION ARE NOT TRANSFERABLE. ONLY A CURRENT CERTIFICATE OF DOCUMENTATION IS VALID FOR VESSEL OPERATION.

**APPROVED**

**DATE**

## I. COMPLETE FOR ALL APPLICATIONS

**A. VESSEL NAME**

SAND DOLLAR

**B. OFFICIAL NUMBER (IF AWARDED) AND HULL IDENTIFICATION NUMBER IF ANY**

922003

**C. NAME OF MANAGING OWNER**

WALDEMAR LUGO ALVAREZ

TELEPHONE NUMBER (OPTIONAL):

SOCIAL SECURITY OR TAX ID NUMBER
SS# 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

**D. ADDRESS OF MANAGING OWNER**

AVE LA SIERRA #300
BOX 37
SAN JUAN, PR 00926

SHOW PHYSICAL ADDRESS IF DIFFERENT FROM MAILING ADDRESS

**E. NAMES AND SOCIAL SECURITY OR TAX ID NUMBERS OF ALL OTHER OWNERS**

MARIA DE LOS ANGELES CURCIO LOPEZ
SS# 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

ATTACH SHEET LISTING ADDITIONAL OWNERS IF NECESSARY

**F. HAILING PORT INCLUDING STATE (TO BE MARKED ON VESSEL)**

SAN JUAN, PUERTO RICO

**G. CITIZENSHIP** (SEE INSTRUCTIONS REGARDING STATUS OF ALIENS LAWFULLY ADMITTED FOR PERMANENT RESIDENCE) VESSEL OWNED:

- [ ] BY ONE OR MORE INDIVIDUALS
- [ ] BY JOINT VENTURE OR ASSOCIATION
- [ ] IN A TRUST ARRANGEMENT
- [ ] BY A PARTNERSHIP OR LIMITED LIABILITY COMPANY
    - A. GENERAL PARTNERSHIP OR LIMITED LIABILITY COMPANY (LLC)
    - B. LIMITED PARTENERSHIP
- [ ] VESSEL OWNED BY A CORPORATION
- [ ] VESSEL OWNED BY A CORPORATION QUALIFIED AND APPLYING UNDER 46 CFR 88.01 (BOWATER)
- [ ] VESSEL OWNED OR OPERATED BY NOT-FOR-PROFIT OIL RECOVERY COOPERATIVE

**H. ENDORSEMENTS FOR WHICH APPLICATION IS MADE.** (IF MORE THAN ONE, INDICATE ESTIMATED PERCENTAGE FOR EACH)

- [X] RECREATIONAL
- [ ] COASTWISE
- [ ] FISHERY
- [ ] COASTWISE (BOWATER ONLY)
- [ ] REGISTRY
- [ ] OIL SPILL RESPONSE
- [ ] COASTWISE UNDER CHARTER TO AN ENTITY QUALIFIED TO ENGAGE IN COASTWISE 46 APP USC 802. COPY OF CHARTER ON FILE WITH U.S.C.G.

## I. PRIMARY SERVICE

- [ ] COMMERCIAL FISHING BOAT
- [ ] FISHING PROCESSING VESSEL
- [ ] FREIGHT SHIP
- [ ] FREIGHT BARGE
- [ ] INDUSTRIAL VESSEL
- [ ] MOBILE OFFSHORE DRILLING UNIT
- [ ] OIL RECOVERY
- [ ] OFFSHORE SUPPLY VESSEL

- [ ] PASSENGER (6 OR FEWER)
- [ ] PASSENGER (MORE THAN 6)
- [ ] PASSENGER BARGE (6 OR FEWER)
- [ ] PASSENGER BARGE (MORE THAN 6)
- [ ] PUBLIC FREIGHT
- [ ] PUBLIC TANKSHIP/BARGE
- [ ] PUBLIC VESSEL, UNC
- [ ] RESEARCH VESSEL

- [ ] SCHOOL SHIP
- [ ] TANK BARGE
- [ ] TANK SHIP
- [ ] TOWING VESSEL
- [ ] UNCLASSIFIED VESSEL
- [x] RECREATIONAL

## J. PURPOSE OF APPLICATION

- [ ] 1. EXCHANGE OF CERTIFICATE OF DOCUMENTATION.
- [ ] 2. REPLACEMENT OF LOST, WRONGFULLY WITHHELD OR MUTILATED CERTIFICATE OF DOCUMENTATION
- [ ] 3. RETURN TO DOCUMENTATION FOLLOWING DELETION, NAME OF VESSEL WHEN LAST DOCUMENTED:
- [ ] 4. APPLICATION FOR OFFICIAL NUMBER AND FIRST CERTIFICATE OF DOCUMENTATION. VESSEL
  - [ ] WAS BUILT AT _____ OR _____ IN _____
  - [ ] IS UNDER CONSTRUCTION AT _____ AND IS SCHEDULED FOR COMPLETION IN _____ MONTH/YEAR

HULL MATERIAL: [ ] WOOD   [ ] STEEL   [ ] FIBROUS REINFORCED PLASTIC   [ ] ALUMINUM   [ ] CONCRETE   [ ] OTHER (DESCRIBE) _____

APPROXIMATE LENGTH OF VESSEL _____

PREVIOUS NAMES, NUMBERS, OR FOREIGN REGISTRATIONS OF VESSEL _____

## K. CERTIFICATION: I (WE) CERTIFY THAT:

(A) I AM (WE ARE) A CITIZEN(S) OF THE UNITED STATES AND LEGALLY AUTHORIZED TO EXECUTE THIS APPLICATION IN THE CAPACITY SHOWN;

(B) THAT THE VESSEL(S) TO WHICH THIS APPLICATION APPLIES:
  (I) [ ] HAS (HAVE) BEEN MARKED   OR   [ ] WILL BE MARKED

IN ACCORDANCE WITH THE DIRECTIONS IN THE INSTRUCTION SHEET (CG-1258-A) FOR THIS APPLICATION;
  (II) WILL AT ALL TIMES REMAIN UNDER THE COMMAND OF A U.S. CITIZEN, UNLESS DOCUMENTED SOLELY WITH A RECREATIONAL ENDORSEMENT.
  (III) WILL NOT BE OPERATED IN A TRADE NOT AUTHORIZED BY THE ENDORSEMENT(S) ON THE CERTIFICATE(S) OF DOCUMENTATION;
  (IV) HAS NOT BEEN REBUILT SINCE LAST DOCUMENTATION
  (V) THE VESSEL IS
  [ ] NOT TITLED UNDER A STATE OR   [ ] IS TITLED UNDER THE LAWS OF _____

(C) THE NAME(S) OF THE VESSEL(S) WILL NOT BE CHANGED WITHOUT APPROVAL FROM THE NATIONAL VESSEL DOCUMENTATION CENTER; AND

(D) (WE) WILL PROMPTLY NOTIFY THE NATIONAL VESSEL DOCUMENTATION CENTER UPON A CHANGE IN ANY OF THE INFORMATION OR REPRESENTATIONS IN THIS APPLICATION.

| PRINTED OR TYPED NAME | SIGNATURE | CAPACITY (E.G., OWNER, AGENT, TRUSTEE, GENERAL PARTNER, CORPORATE OFFICER) |
|---|---|---|
| WALDEMAR LUGO ALVAREZ | | CO-OWNER |
| MARIA DE LOS ANGELES CURCIO LOPEZ | | CO-OWNER |

DATE: 5-23-01

## PRIVACY ACT STATEMENT

IN ACCORDANCE WITH 5 U.S.C. 552a, THE FOLLOWING INFORMATION IS PROVIDED TO YOU WHEN SUPPLYING PERSONAL INFORMATION TO THE U.S. COAST GUARD.

1. AUTHORITY. SOLICITATION OF THIS INFORMATION IS AUTHORIZED BY 46 U.S.C. CHAPTERS 121 AND 125; 46 U.S.C. APP. 802 AND 883.
2. THE PRINCIPAL PURPOSES FOR WHICH THIS INFORMATION IS TO BE USED ARE:
   (1) TO DETERMINE CITIZENSHIP OF THE OWNER OF THE VESSEL FOR WHICH APPLICATION FOR DOCUMENTATION IS MADE AND
   (2) TO DETERMINE ELIGIBILITY OF THE VESSEL TO BE DOCUMENTED WITH THE TRADE ENDORSEMENT SOUGHT.
3. THE ROUTINE USES WHICH MAY BE MADE OF THIS INFORMATION INCLUDE RELEASE TO LAW ENFORCEMENT OFFICIALS, TO THE GENERAL PUBLIC UNDER FREEDOM OF INFORMATION ACT, AND TO PUBLISH INFORMATION ABOUT U.S. DOCUMENTED VESSELS.
4. DISCLOSURE OF THE INFORMATION REQUESTED ON THIS FORM IS VOLUNTARY, HOWEVER, FAILURE TO PROVIDE THE INFORMATION REQUESTED WILL RESULT IN DENIAL OF THE APPLICATION FOR DOCUMENTATION, WHICH MAY PREVENT THE OWNER FROM OPERATING THE VESSEL(S) IN A SPECIFIED TRADE.
THE COAST GUARD ESTIMATES THAT THE AVERAGE BURDEN FOR THIS FORM IS 20 MINUTES. YOU MAY SUBMIT ANY COMMENTS CONCERNING THE ACCURACY OF THIS BURDEN ESTIMATE OR MAKE SUGGESTIONS FOR REDUCING THE BURDEN TO: NATIONAL VESSEL DOCUMENTATION CENTER, 2039 STONEWALL JACKSON DRIVE, FALLING WATERS, WEST VIRGINIA 25419, OR OFFICE OF MANAGEMENT AND BUDGET, OFFICE OF INFORMATION AND REGULATORY AFFAIRS, ATTENTION: DESK OFFICER FOR DOT(2105), OLD EXECUTIVE OFFICE BUILDING, WASHINGTON, DC 20503.

**I. PRIMARY SERVICE**

| | | |
|---|---|---|
| ☐ COMMERCIAL FISHING BOAT | ☐ PASSENGER (6 OR FEWER) | ☐ SCHOOL SHIP |
| ☐ FISHING PROCESSING VESSEL | ☐ PASSENGER (MORE THAN 6) | ☐ TANK BARGE |
| ☐ FREIGHT SHIP | ☐ PASSENGER BARGE (6 OR FEWER) | ☐ TANK SHIP |
| ☐ FREIGHT BARGE | ☐ PASSENGER BARGE (MORE THAN 6) | ☐ TOWING VESSEL |
| ☐ INDUSTRIAL VESSEL | ☐ PUBLIC FREIGHT | ☐ UNCLASSIFIED VESSEL |
| ☐ MOBILE OFFSHORE DRILLING UNIT | ☐ PUBLIC TANKSHIP/ BARGE | ☒ RECREATIONAL |
| ☐ OIL RECOVERY | ☐ PUBLIC VESSEL, UNC | |
| ☐ OFFSHORE SUPPLY VESSEL | ☐ RESEARCH VESSEL | |

**J. PURPOSE OF APPLICATION**

☐ 1. EXCHANGE OF CERTIFICATE OF DOCUMENTATION.

☐ 2. REPLACEMENT OF LOST, WRONGFULLY WITHHELD OR MUTILATED CERTIFICATE OF DOCUMENTATION.

☐ 3. RETURN TO DOCUMENTATION FOLLOWING DELETION, NAME OF VESSEL WHEN LAST DOCUMENTED:

☐ 4. APPLICATION FOR OFFICIAL NUMBER AND FIRST CERTIFICATE OF DOCUMENTATION, VESSEL

☐ WAS BUILT AT _____ IN _____

OR                                                                                         **MONTH/YEAR**

☐ IS UNDER CONSTRUCTION AT _____ AND IS SCHEDULED FOR COMPLETION IN _____

HULL MATERIAL: ☐ WOOD   ☐ STEEL   ☐ FIBROUS REINFORCED PLASTIC   ☐ ALUMINUM   ☐ CONCRETE

☐ OTHER (DESCRIBE) _____

APPROXIMATE LENGTH OF VESSEL _____

PREVIOUS NAMES, NUMBERS, OR FOREIGN REGISTRATIONS OF VESSEL _____

**K. CERTIFICATION: I (WE) CERTIFY THAT:**

(A) I AM (WE ARE) A CITIZEN(S) OF THE UNITED STATES AND LEGALLY AUTHORIZED TO EXECUTE THIS APPLICATION IN THE CAPACITY SHOWN;

(B) THAT THE VESSEL(S) TO WHICH THIS APPLICATION APPLIES;

(I) ☐ HAS (HAVE) BEEN MARKED   OR   ☐ WILL BE MARKED

IN ACCORDANCE WITH THE DIRECTIONS IN THE INSTRUCTION SHEET (CG-1258-A) FOR THIS APPLICATION;

(II) WILL AT ALL TIMES REMAIN UNDER THE COMMAND OF A U.S. CITIZEN, UNLESS DOCUMENTED SOLELY WITH A RECREATIONAL ENDORSEMENT.

(III) WILL NOT BE OPERATED IN A TRADE NOT AUTHORIZED BY THE ENDORSEMENT(S) ON THE CERTIFICATE(S) OF DOCUMENTATION;

(IV) HAS NOT BEEN REBUILT SINCE LAST DOCUMENTATION

(V) THE VESSEL IS

☐ NOT TITLED UNDER A STATE   OR   ☐ IS TITLED UNDER THE LAWS OF _____

(C) THE NAME(S) OF THE VESSEL(S) WILL NOT BE CHANGED WITHOUT APPROVAL FROM THE NATIONAL VESSEL DOCUMENTATION CENTER; AND

(D) I (WE) WILL PROMPTLY NOTIFY THE NATIONAL VESSEL DOCUMENTATION CENTER UPON A CHANGE IN ANY OF THE INFORMATION OR REPRESENTATIONS IN THIS APPLICATION.

| PRINTED OR TYPED NAME | SIGNATURE | CAPACITY (E.G. OWNER, AGENT, TRUSTEE, GENERAL PARTNER, CORPORATE OFFICER) |
|---|---|---|
| WALDEMAR LUGO ALVAREZ | | CO-OWNER |
| MARIA DE LOS ANGELES CURCIO LOPEZ | | CO-OWNER |

DATE: 5-23-01

**PRIVACY ACT STATEMENT**

IN ACCORDANCE WITH 5 U.S.C. 552a, THE FOLLOWING INFORMATION IS PROVIDED TO YOU WHEN SUPPLYING PERSONAL INFORMATION TO THE U.S. COAST GUARD.

1. AUTHORITY. SOLICITATION OF THIS INFORMATION IS AUTHORIZED BY 46 U.S.C., CHAPTERS 121 AND 125; 46 U.S.C. APP. 883 AND 884.

2. THE PRINCIPAL PURPOSES FOR WHICH THIS INFORMATION IS TO BE USED ARE:
   (1) TO DETERMINE CITIZENSHIP OF THE OWNER OF THE VESSEL FOR WHICH APPLICATION FOR DOCUMENTATION IS MADE; AND
   (2) TO DETERMINE ELIGIBILITY OF THE VESSEL TO BE DOCUMENTED WITH THE TRADE ENDORSEMENT SOUGHT.

3. THE ROUTINE USES WHICH MAY BE MADE OF THE INFORMATION INCLUDE RELEASE TO LAW ENFORCEMENT OFFICIALS AND TO THE GENERAL PUBLIC UNDER FREEDOM OF INFORMATION ACT, AND TO PUBLISH INFORMATION ABOUT U.S. DOCUMENTED VESSELS.

4. DISCLOSURE OF THE INFORMATION REQUESTED ON THIS FORM IS VOLUNTARY. HOWEVER, FAILURE T PROVIDE THE INFORMATION REQUESTED WILL RESULT IN DENIAL OF THE APPLICATION FOR DOCUMENTATION, WHICH MAY PREVENT THE OWNER FROM OPERATING THE VESSEL(S) IN A SPECIFIED TRADE.

THE COAST GUARD ESTIMATES THAT THE AVERAGE BURDEN FOR THIS FORM IS 30 MINUTES. YOU MAY SUBMIT ANY COMMENTS CONCERNING THE ACCURACY OF THIS BURDEN ESTIMATE OR MAKE SUGGESTIONS FOR REDUCING THE BURDEN TO: NATIONAL VESSEL DOCUMENTATION CENTER, 2039 STONEWALL JACKSON DRIVE, FALLING WATERS, WEST VIRGINIA 25419, OR OFFICE OF MANAGEMENT AND BUDGET, OFFICE OF INFORMATION AND REGULATORY AFFAIRS, ATTENTION: DESK OFFICER FOR DOT/USCG, OLD EXECUTIVE OFFICE BUILDING, WASHINGTON, DC 20503.

# Elaine Grossman Yacht Documentation, Inc.

1600 S.E. 17th Street Causeway • Suite 420
Fort Lauderdale, Florida 33316
Tel 954/463-0770    Fax 954/524-5345

TO WHOM IT MAY CONCERN:

RE:   SAND DOLLAR

GENTLEMEN:

BY WAY OF THIS LETTER, I/WE, THE UNDERSIGNED, HEREBY APPOINT ELAINE GROSSMAN YACHT DOCUMENTATION, INC. ("EGYD") AS MY/OUR AGENT TO APPLY FOR DOCUMENTATION AND/OR RECORDATION OF A FIRST PREFERRED SHIP'S MORTGAGE WITH THE UNITED STATES COAST GUARD.  THIS FURTHERMORE AUTHORIZES THE U.S. COAST GUARD TO ADVISE "EGYD" DIRECTLY IN THE EVENT OF ANY QUESTIONS OR ADDITIONAL INFORMATION ON ANY AND ALL RECORDABLE INSTRUMENTS.

SIGNATURE _____       DATE 5/23/01
WALDEMAR LUGO ALVAREZ

SIGNATURE _____       DATE 5/23/01
MARIA DE LOS ANGELES CURCIO LOPEZ

DEPARTAMENTO DE ESTADO
GOBIERNO DE PUERTO RICO
DECLARACION DE FINANCIAMIENTO
FINANCING STATEMENT

Favor de seguir cuidadosamente las instrucciones indicadas al dorso de esta forma.
Please follow carefully the instructions indicated on the reverse side of this form.

Para añadir más información utilice la hoja de apéndice UCC-1A-PR
To add more information use the addendum form UCC-1A-PR

Reservado para el oficial de archivo / Reserved for the filing officer

Sello de fecha y hora :
Date and time stamp :

Número de registro :
Registration number :

**A. DEVOLVER COPIA A: / RETURN COPY TO:**   (Nombre y dirección postal / Name and mailing address)

EUROBANK
C/O LCDO. NELSON WILLIAM GONZALEZ
P.O. BOX 360332
SAN JUAN, PUERTO RICO  00936-332

**1. NOMBRE DEL PRIMER DEUDOR / FIRST DEBTOR'S NAME**   Complete sólo un nombre (a o b) / Insert only one name (a or b)

| a. Apellido del individuo / Individual's last name | Segundo apellido / Second surname | Primer nombre / First name | Segundo nombre / Middle name | Sufijo/Suffix |
|---|---|---|---|---|
| LUGO | ALVAREZ | WALDEMAR | | |

b. Nombre de la entidad / Entity name

c. Dirección postal / Mailing address

| | Ciudad / City | Estado/State | País/Country | Código postal / Zip code |
|---|---|---|---|---|
| AVENIDA LA SIERRA #300  BOX 37 | SAN JUAN | | PR | 00926 |

d. Número de seguro social o patronal / Social security or tax-id number   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

e. (Opcional) Información adicional sobre la entidad / (Optional) Additional information about the entity

**2. NOMBRE DE DEUDOR ADICIONAL / ADDITIONAL DEBTOR'S NAME**   Complete sólo un nombre (a o b) / Insert only one name (a or b)

| a. Apellido del individuo / Individual's last name | Segundo apellido / Second surname | Primer nombre / First name | Segundo nombre / Middle name | Sufijo/Suffix |
|---|---|---|---|---|
| CURCIO | LOPEZ | MARIA DE LOS ANGELES | | |

b. Nombre de la entidad / Entity name

c. Dirección postal / Mailing address

| | Ciudad / City | Estado/State | País/Country | Código postal / Zip code |
|---|---|---|---|---|
| AVENIDA LA SIERRA #300 - BOX 37 | SAN JUAN | | PR | 00926 |

d. Número de seguro social o tax-id number   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

e. (Opcional) Información adicional sobre la entidad / (Optional) Additional information about the entity

**3. NOMBRE DEL ACREEDOR GARANTIZADO / SECURED PARTY'S NAME**   Complete sólo un nombre (a o b) / Insert only one name (a or b)

| a. Apellido del individuo / Individual's last name | Segundo apellido / Second surname | Primer nombre / First name | Segundo nombre / Middle name | Sufijo/Suffix |
|---|---|---|---|---|
| EUROBANK | | | | |

b. Nombre de la entidad / Entity name

c. Dirección postal / Mailing address

| | Ciudad / City | Estado/State | País/Country | Código postal / Zip code |
|---|---|---|---|---|
| CALL BOX 191009 | SAN JUAN | | PR | 00919-1009 |

**4. ESTA DECLARACION DE FINANCIAMIENTO CUBRE LAS SIGUIENTES CLASES O ARTICULOS DE PROPIEDAD:**
THIS FINANCING STATEMENT COVERS THE FOLLOWING TYPES OR ITEMS OF PROPERTY:

"FIRST PREFERRED MORTGAGE" SOBRE LA EMBARCACION "SAND DOLLAR, UNA LANCHA DE PLACER
DE 35 PIES DE ESLORA MARCA VIKING FISHERMAN CON NUMERO DE REGISTRO 922003, CON LA CUAL
SE GARANTIZARA UN PRESTAMO POR LA CANTIDAD DE $84,000.00 CONCEDIDO POR EUROBANK.

**5. MARQUE SI APLICA / CHECK IF APPLICABLE** (Describa la propiedad en el apéndice / Describe the real estate in the addendum)

☐ Los bienes anteriores habrán de convertirse en inmuebles por su destino. The goods described above are to become fixtures. Esta declaración se presentará para registro en el Registro de la Propiedad. This Financing Statement will be filed for record in the Real Estate Registry.

**6. FIRMA(S) / SIGNATURE(S)**

Primer deudor / First debtor

Deudor adicional / Additional debtor

Acreedor garantizado / Secured party

**7. NOTARIA (Opcional) / NOTARY (Optional)**

AFFIDAVIT NUMERO / NUMBER: 18068

Jurado y suscrito, ante mi por. / Sworn and suscribed before me by: Waldemar Lugo Alvarez y su esposa María de los
Angeles Curcio López, ambos mayores de edad, propietarios y vecinos de San Juan,
Puerto Rico, a quienes doy fe de conocer personalmente, en San Juan, Puerto Rico,
a 25 de mayo de 2001.

MALDONADO

 

**ORIENTAL**
Banking • Mortgages • Investments

8 de julio de 2010

Lcdo. Carlos R. Sosa Padro
Carlos R. Sosa Padro, Esq.
Vick Center A-302
Río Piedras, Puero Rico

Re: **Balances Prestamos #2564004575 y #2564000072**
   **Oscar Torres Centeno-Q. cap.13 #10-05039**

Estimado licenciado Sosa:

Luego de consultar el caso con el Sr. Luis González ante la nueva Q. radicada por el cliente en referencia y tendiendo claro su conocimiento del mismo, éste autoriza a que usted se haga cargo por completo también de esta nueva Q. Deberá radicar los POC y asistir a las vista, ext…

A continuación los balances al **8 de junio 2010**, fecha en que el Sr. Torres Centeno radica la quiebra. Ambas deudas ya vencidas.

**Préstamo #2564004575**
$30,000.00- principal
_12,088.75- intereses
**$42,088.75** + gastos y honorarios

**Préstamo #2564000072**
$92,545.50- principal
_38,670.77- intereses
**$131,215.77**+ gastos y honorarios

Cualquier otra información que necesite, favor llamar al (787) 622-0101, est. 2408

Atentamente,

Taty González Díaz
Depto. De Quiebra

PO Box 195115
San Juan PR 00919-5115
Tel 1-800-981-5554

www.OrientalOnline.com





Department of Defense Manpower Data Center



Military Status Report
Pursuant to the Service Members Civil Relief Act

| Last Name | First/Middle | Begin Date | Active Duty Status | Active Duty End Date | Service Agency |
|---|---|---|---|---|---|
| LUGO-ALVAREZ | WALDEMAR | | Based on the information you have furnished, the DMDC does not possess any information indicating the individual status. | | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Service Members Civil Relief Act (50 USC App. §§ 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person is on active duty and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. §521(c).

If you obtain additional information about the person (e.g., an SSN, improved accuracy of DOB, a middle name), you can submit your request again at this Web site and we will provide a new certificate for that query.

This response reflects **active duty status** including date the individual was last on active duty, if it was within the preceding 367 days. For historical information, please contact the Service SCRA points-of-contact.

## *More information on "Active Duty Status"*

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d)(1) for a period of more than 30 consecutive days. In the case of a member of the National Guard, includes service under a call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive days under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy TARs, Marine Corps ARs and Coast Guard RPAs. Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps) for a period of more than 30 consecutive days.

## *Coverage Under the SCRA is Broader in Some Cases*

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of SCRA extend beyond the last dates of active duty.

Those who would rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected.

WARNING: This certificate was provided based on a name and SSN provided by the requester. Providing an erroneous name or SSN will cause an erroneous certificate to be provided. Report ID:HHRC8I2GR0